King, J.
This is an action in foreclosure, the plaintiff alleging in the first cause of action of his petition that the defendants on the 3rd day of February, 1930, executed and delivered to plaintiff their certain promissory note in the sum of $3600.00 with interest at 6% per annum payable in monthly installments of $38.67. The note which is attached to the petition and upon which suit is brought recites that said sum of $3600.00 is payable, “in gold coin of the United States of America of the present standard of weight and fineness.”
The petition alleges further that defendants having defaulted in their contract and that there is due and owing plaintiff upon said note fhe sum of $3598.18.
*66 The defendant demurs to the petition on the ground that the contract is illegal and unenforceable because the note calls for payment in gold and that by act of Congress passed March 9, 1933, such is prohibited and made illegal. Counsel in his brief contend that under this act for the defendant to pay the sum of money would make them criminals, subjecting them to fine and punishment.
The act of Congress to which counsel refer and upon which he bases his claim provides as follows:
“(n) Exchange of gold coin, bullion and certificates for other currency on order of Secretary of Treasury; costs, penalties. Whenever in the judgment of the secretary of treasury such action is necessary to protect the currency system of the United States, the Secretary of Treasury in his discretion, may require any or all individuals, partnerships, associations and corporations to pay and deliver to the treasurer of the United States any or all gold coin, gold bullion and gold certificates owned by such individuals, partnerships, associations and corporations. Upon receipt of such gold coin, gold bullion or gold certificates, the secretary of the treasury shall pay therefor an equivalent amount of any other form of coin or currency coined or issued under the laws of the United States. The Secretary of the Treasury shall pay all costs of the transportation of such gold bullion, gold certificates, coin or currency, including the cost of insurance protection, and such other incidental costs as may be reasonably necessary. Any individual, partnership, association or corporation failing to comply with any requirements of the Secretary of the Treasury made under this subsection shall be subject to a penalty equal to twice the value of the gold or gold certificates in respect of which such failure occurred and such penalty may be collected by the Secretary of the Treasury by suit or otherwise.”
It is further alleged by defendant that the president of the United States issued the following executive order:
“By virtue of the authority vested in me by Section 5 (B) of the act of October 6, 1917, as amended by Sec. 2 of the act of March 9, 1933, entitled ‘An act to provide relief in the existing national emergency in banking and for other purposes,’ in which amendatory act Congress declared that a serious emergency exists, I, Franklin D. Roosevelt, President of the United States of America do declare that said national emergency continues to exist and pursuant to said section do hereby prohibit the hoard *67 ing of gold coin, gold bullion, and gold certificates within the continental United States by individuals, partnerships, associations and corporations, and hereby prescribe the following regulations for carrying out the purposes of this order;
“Sec. 1 * * * *
“Sec. 2. All persons are hereby required to deliver on or before May 1, 1933, to a Federal Reserve Bank or a branch or agency thereof or to any member bank of the Federal Reserve System all gold coin, gold bullion, and gold certificates now owned by them or coming into their ownership on or before April 28,1933, except the following:
“(a) * * * *
“(b) Gold coin and gold certificates in an amount not exceeding in the aggregate $100.00 belonging to any one person.”
As above stated, defendant claims that because the obligation which was entered into with the plaintiff called for payment in gold, it is now invalid and unenforceable on account of the provisions of the act of Congress, supra, and the action of the Secretary of the Treasury of the United States and the executive order of the President of the United States, promulgated in pursuance to said act of Congress.
It is not disputed that the plaintiff loaned to the defendant the sum of $3600.00 which the defendants agreed to pay and upon which obligation they are now in default. Further, the defendant executed and delivered to the plaintiff a mortgage upon the premises described in the petition to secure the payment of said sum of money. Plaintiff prays for judgment in the sum of $3600.00 that a decree of foreclosure be entered, the mortgaged premises to be sold and the proceeds derived thereof by the sheriff be applied toward the satisfaction of the judgment.
The defendant demurs, “to the petition.” As to the second and third causes of action, there is no question but that each cause of action is sufficient as against demurrer. The general demurrer to the petition having been filed and having reached the conclusion that two causes of action are sufficient, the court would be warranted in overruling the demurrer, thus making it unnecessary to discuss the question raised by defendants as to the unenforceability of the note by reason of the act of Congress, supra. How *68 ever, in view of the lengthy discussion by counsel and the insistence with which he has urged in his brief the illegality of the contract on account of the act of Congress, we shall dispose of the questions presented. It is urged in brief by defendants that the obligation of defendants entered into before the passage of the act of Congress and' the orders of the Secretary of the Treasury and the President of the United States is cancelled and nullified by the act of Congress, consequently they are not obliged to pay their debts. With this contention we can not agree. The act of Congress in question and the authority exercised in pursuance thereof were measures adopted and necessitated by the financial and economic conditions existing and were for the purpose of stabilizing the currency of the country. This act neither expressly nor by inference invalidates contracts lawfully entered into providing for payment in gold. Such was not the purpose or the intention of the enactment. Moreover, Congress is without authority to cancel the debt owed by defendants to plaintiff, calling for payment in gold, which contract or obligation, at the time it was entered into was in all particulars lawful. If defendants were correct it would amount to the confiscation of plaintiff’s property without compensation.
The Constitution of the United States would not permit legislation producing such results as contended by defendants.
The Constitution grants the Congress the power to coin money and regulate the values thereof. The act in question is in pursuance of this constitutional grant and authority. The power to coin money is a great trust devolved upon Congress, carrying with it the duty of creating and maintaining a uniform standard of value throughout the Union. There is no authority in any legislative body to promulgate or sanction acts of flagrant injustice.
“For as there are unchangeable principles of right and morality, without which society would be impossible, so there are fundamental principles of eternal justice upon the existence of which all constitutional government is founded and without which government would be an intolerable and hateful tyranny.
“ ‘There are acts,’ says Justice Chase in Calder v. Bull, ‘which the Federal and State Legislatures can not do without exceeding their authority’.”
*69 Among these he mentions, “a law which punishes a citizen for an innocent action, a law that destroys the lawful, private contracts of citizens, a law that makes a man a judge in his own case, and a law which takes the property from A and gives it to B.” “it is against all reason and right,” says the learned Justice, “for a people to entrust a Legislature with such powers and therefore it can not be presumed that they have done it. The genius, the nature and the spirit of our state governments amount to a prohibition of such acts of legislation and the general principles of law and reason forbid them. The Legislature may enjoin, permit, forbid and punish, they may declare new crimes and establish rules of conduct for all citizens in future cases, they may command what is right and prohibit what is wrong, but they can not change innocence into guilt, punish innocence as crime or violate the rights of an antecedent lawful private contract or the right of private property.”
The inviolability of lawful contractual relationships both public and private is an institution of our country, founded by the fathers and which has contributed so largely to the greatness of our country and the prosperity and well being of its citizenship. No legislative authority should sanction or judicial tribunal tolerate any act that would tend to destroy or weaken our faith in this structure.
We conclude that the interpretation of the Act of Congress, supra, by counsel for defendants is wholly unwarranted. That it was not the intention of Congress, nor does the act provide that contracts lawfully entered into for the payment of gold are invalid and unenforceable. We would be content to conclude with the foregoing observations, but in view of the fact that the act of Congress in question renders at this time the payment of gold impossible, we shall anticipate the inquiry as to the means of payment.
In our opinion, this precise question was answered in the case of Feist v. Socite Intercomunale Beige d’ Electricite, decided by English House of Lords on December 15, 1933. Suit in that case was brought upon a bond, the clause providing for the payment of the bond being as follows: “In sterling, in gold coin of the United Kingdom of or equal *70 the standard of weight and fineness existing on September 1, 1928.” At the time when suit was instituted by plaintiff the gold standard in England was suspended. The situation with reference to the payment of obligations calling for payment in gold are similar to the situation in this country, that is to say, gold was unavailable. The plaintiff was insisting that he was entitled to a judgment for the payment of the obligation in gold. The British Court of Appeals had previously held that a bond containing a gold clause could be satisfied by the tender of paper currency in the amount specified in the bond. The British House of Lords in reversing this judgment said, Lord Russell of Kellowen, speaking for the court, said:
“Again, if one looks at clause 4 of the bond, the reference which it contains to gold coin of the United Kingdom can not bear its literal meaning. There is no issue or amount outstanding ‘In gold coin of the United Kingdom.’ Taking even clause 1 by itself it would be practically impossible to fulfill its literal requirements even if a sufficiency of gold coin were still in circulation for, according to its strict reading, the coins tendered would all have to be coins of the exact standard of weight and exact standard of fineness specified in the coinage act, 1820, without remedy, allowance or variation from the standard. Thus neither in clause 1 nor clause 2 can the words have been intended by the parties to carry their literal interpretation.
“I, therefore, ask myself the question if the words of the gold clause can not have been used by the parties in the sense which they literally bear ought I to ignore them altogether and attribute no meaning to them, or ought I, if I can discover it from the document, attribute some other meaning to them? Clearly the latter course should be adopted if possible for the parties must have inserted the special words for some special purpose, and if that purpose can be discerned by legitimate means effect should be given to it.
“In my opinion the purpose can be discerned from clause 4, in which the reference to gold coin of the United Kingdom is clearly not a reference to the mode of payment but to the measure of the company’s obligation. So, too, condition six which again is a clause but not directed to mode of payment, but to describing and measuring liabilty, shows that the words are used as such as measure.”
“In just the same way I think that in clauses one and two of the bond the parties are referring to gold coin of the United Kingdom of a specific standard of weight *71 and fineness not as being the mode in which the company’s indebtedness is to be discharged, but as being the means by which the amount of that indebtedness is to be measured and ascertained. I would construe clause one not as meaning that 100 pounds is to be paid in a certain way, but as meaning that the obligation is to pay a sum which would represent the equivalent to 100 pounds if paid in a particular way. In other words, I would construe the clause as though it ran thus, ‘pay * * * in sterling a sum equal to the value of 100 pounds if paid in gold coin of the United Kingdom, of or equal to the standard of weight and fineness existing on the first day of September, 1928’.”
$$$$$$
“The treatment of the gold clause as indicating a mere modality of payment without reference to a gold standard of value, would be not to construe it but' to destroy it.”
The plaintiff in the instant case under the contract is entitled to have the obligation paid in lawful currency ■ of the United'States of America in a sum equal in value to the amount of gold called for in the note. Any other construction, in our opinion, would destroy the contract. For the foregoing reasons, let the demurrer be overruled.